UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────

MALIK ROBERTSON,

                Petitioner,

          V.

DALE ARTUS,

                Respondent.

─────────────────────────────────────────

**REPORT AND
RECOMMENDATION**

04-CV-946
(NAM/VEB)

## I. INTRODUCTION

Petitioner Malik Robertson, acting *pro se*, commenced this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner is an inmate at the Auburn Correctional Facility. In 1998, he was convicted in a New York State court of Second Degree Murder and Second Degree Attempted Murder and sentenced to a term of imprisonment. Petitioner contends that his conviction was imposed in violation of his constitutional rights and should therefore be vacated.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is presently before this Court for a report and recommendation. (Docket No. 21).

## II. BACKGROUND

**A.**    **Facts**

On November 12, 2000, in the city of Syracuse, New York, Petitioner repeatedly fired a gun into a car, killing Ricky Washington and injuring Dayron Bennett. (T3 at 739,

881).[1]  Eyewitnesses came forward and identified Petitioner as the shooter and he was thereafter arrested.  (T3 734-36, 875-76).

On November 28, 2000, an Onondaga County Grand Jury returned Indictment Number 2000-1055-1, which charged Petitioner with Murder in the Second Degree, in violation of New York Penal Law ("NYPL") §125.25(1)[2] and with Attempted Murder in the Second Degree, in violation of NYPL § 110.00 as further defined in §125.25(1).

### B.    State Trial Court Proceedings

The Honorable John J. Brunetti, Onondaga County Court Judge, presided over Petitioner's trial proceedings.  Petitioner's first trial began on May 31, 2001, and ended in mistrial on June 11, 2001, when the jury was unable to reach a verdict. Petitioner's second trial began on July 31, 2001, and also ended in mistrial on August 9, 2001 when the jury was again unable to reach a verdict.

Petitioner's third trial began on October 22, 2001.  Petitioner was represented by Randi Bianco, Esq. and Thomas Miller, Esq.  On October 30, 2001, the jury found Petitioner guilty of Murder in the Second Degree and Attempted Murder in the Second Degree.   (T3 at 1143). On December 21, 2001, Petitioner was sentenced to an indeterminate prison term of twenty-five (25) years to life for his conviction of Murder in the Second Degree and a determinate term of fifteen (15) years for his conviction of Attempted

---

[1]References preceded by "T" are to the transcript pages of Petitioner's trials.  Because Petitioner's first two trials ended in mistrials, there are three trial transcripts.  Therefore, references to his third trial, the subject of this proceeding, will be preceded by "T3".

[2]Unless otherwise indicated, all references to the NYPL are to McKinney 1998.

Murder in the Second Degree.  (S at 13).[3]  Both sentences were to run consecutively.

Therefore, Petitioner's total aggregate sentence was forty (40) years to life.


**C.      State Appellate Proceedings**

In August 2002, Petitioner, represented by Philip Rothschild, Esq., appealed his

conviction to the Appellate Division, Fourth Department, of the New York State Supreme

Court.  Petitioner asserted six arguments before the Appellate Division: (1) his double

jeopardy rights were violated by his retrial and conviction; (2) the trial court's instruction on

intent amounted to an impermissible amendment of the indictment; (3) the verdict was

based on insufficient evidence and was against the weight of the evidence; (4) the trial court

erred in denying his motion for inspection of the grand jury minutes and dismissal of

defective proceedings; (5) the trial court erred in allowing a bartender to testify to Petitioner's

bad acts a week prior to the shooting without showing how the probative value outweighed

the prejudice; and (6) the trial court erred by failing to hold a hearing to address Petitioner's

Criminal Procedure Law ("CPL") § 330.30 and § 330.50 motions.

In a decision issued on February 7, 2003, the Appellate Division unanimously

affirmed Petitioner's conviction.  People v.Robertson, 302 A.D.2d 956 (4th Dep't 2003).

Petitioner's application for leave to appeal to the Court of Appeals was denied on May 27,

2003. People v.Robertson, 100 N.Y.2d 542 (2003).


**D.  Federal Habeas Corpus Proceedings**

---

[3]References preceded by "S" are to the transcript pages of Petitioner's sentencing proceedings.

3

Petitioner, proceeding *pro se*, commenced this action on July 21, 2004, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Western District of New York. See (Docket No. 1).  On July 30, 2004, this action was transferred to the United States District Court for the Northern District of New York. See (Docket No. 1).  In his Petition, Petitioner asserted the same six grounds for relief that he did before the Appellate Division.  (Docket No. 2).

On February 18, 2005, Respondent filed submissions in opposition.  (Docket Nos. 18, 19).  This case was referred to the undersigned by Order of the Honorable Norman A. Mordue, Chief United States District Judge, on November 5, 2007. (Docket No. 21).  For the reasons that follow, this Court recommends that this Petition be DISMISSED.


### III. DISCUSSION

**A.    Federal Habeas Corpus Standard**

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under  AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits."  28 U.S.C. § 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001).  The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." Sellan, 261 F.3d at 313 (quotation omitted).  The Second Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to constitute an "adjudication on the merits" for purposes of AEDPA. Id. at 312-313.

Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714, 715 n. 1 (2d Cir. 1997), and AEDPA requires a Petitioner to rebut that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002). A presumption of correctness applies to findings by both state trial and appellate courts. Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001); Whitaker, 123 F.3d at 715 n.1.

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law. A state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." Id.

A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." Id.

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

**B.     Petitioner's Claims**

As set forth above, Petitioner asserts the same six grounds for relief as he did before the Appellate Division.  This Court will address each claim in turn.

**1.     Double Jeopardy**

In Petitioner's first claim for habeas relief, he asserts that his retrials violated his rights against double jeopardy because there was insufficient evidence against him as a matter of law.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb...." U.S. Const. amend. V. This provision "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." North Carolina v. Pearce,

6

395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (footnotes omitted); accord United States v. Estrada, 320 F.3d 173, 180 (2d Cir.2003) (quoting Sattazahn v. Pennsylvania, 537 U.S. 101, 106, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003)).

The Fifth Amendment's prohibition against Double Jeopardy has been incorporated into the Fourteenth Amendment's Due Process Clause and thereby has been made applicable to the States. Benton v. State of Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

When addressing this claim on direct appeal, the Appellate Division found that "in view of defendant's motions seeking mistrials, the mistrials were 'granted on the defendant's consent,' and thus the retrials were not barred by double jeopardy." Robertson, 302 A.D.2d at 956 (citing cases). Therefore, in order to prevail with respect to his claim for habeas corpus relief, Petitioner must show that the Appellate Division's ruling was contrary to or an unreasonable application of clearly established federal law, as determined by the United States Supreme Court.

In Richardson v. United States, 468 U.S. 317 (1984), Supreme Court held that a retrial following a trial ending in a hung jury does not violate the double jeopardy clause, regardless of the sufficiency of the evidence at the first trial. In Richardson, the defendant argued that if the government failed to introduce sufficient evidence to establish his guilt beyond a reasonable doubt at his first trial, he could not be tried again following a declaration of a mistrial because of a hung jury. 468 U.S. at 323. The Supreme Court rejected defendant's reliance upon Burks v. United States, 437 U.S. 1, 18 (1978), noting that Burks held only that once a defendant, after having been convicted, obtained an unreversed appellate ruling that the government had failed to introduce sufficient evidence to convict

him at trial, a second trial was barred by the double jeopardy clause.

Where, as in this case, "there has been only a mistrial resulting from a hung jury, Burks simply does not require that an appellate court rule on the sufficiency of the evidence because retrial might be barred by the Double Jeopardy Clause." Id. (emphasis added) (citing Justices of Boston Municipal Court v. Lydon, 466 U.S. 294, 308-310 (1984)).  The Supreme Court stated that it has "constantly adhered to the rule that a retrial following a 'hung jury' does not violate the Double Jeopardy Clause." Id. at 326.

Thus, Richardson "reaffirm[ed] the proposition that a trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which petitioner was subjected." Id.  The Supreme Court explained that like the defendant, the prosecution "is entitled to resolution of the case by verdict from the jury, and jeopardy does not terminate when the jury is discharged because it is unable to agree." Id. Therefore, the Supreme Court held in Richardson, "[r]egardless of the sufficiency of the evidence at petitioner's first trial, he has no valid double jeopardy claim to prevent his retrial." Id.; accord, e.g., United States v. Gotti, 413 F.Supp.2d 287, 294 (S.D.N.Y.2005); Pawloski v. Kelly, 932 F.Supp. at 481.

Accordingly, Petitioner's double jeopardy claim based on the alleged insufficiency of the evidence has no basis in federal law and should be DENIED.

## 2.    Intent Instruction

Petitioner's second claim for habeas relief is that the trial court erred in its instruction to the jury on intent.  Specifically, Petitioner asserts that the trial court improperly amended

his indictment by virtue of its charge on intent.

The law is well settled that "'it is not the province of a federal habeas court to reexamine state-court determinations of state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treatises of the United States.' " Davis v. Strack, 270 F.3d 111, 123 (2d Cir.2001) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)).

Where a defendant alleges error in a state court's jury instruction, he must establish "not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Id. (quoting Cupp v. Naughten, 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)).

The Fifth Amendment of the Constitution protects a defendant from being convicted of an offense that is different from that which was included in the indictment returned by a grand jury. Stirone v. United States, 361 U.S. 212, 217, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960) (citing Ex parte Bain, 121 U.S. 1, 10, 7 S.Ct. 781, 30 L.Ed. 849 (1887) (The Fifth Amendment, providing that "no person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a grand jury," forbids the making of a change or amendment in the body of an indictment after it has been filed.), overruled on other grounds, United States v. Cotton, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002)); accord United States v. Helmsley, 941 F.2d 71, 89 (2d Cir.1991), cert. denied, 502 U.S. 1091, 112 S.Ct. 1162, 117 L.Ed.2d 409 (1992).

"An unconstitutional amendment of the indictment occurs when the charging terms are altered, either literally or constructively, such as when the trial judge instructs the jury.

9

In contrast, a variance occurs when the charging terms are unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." Helmsley, 941 F.2d at 89 (citing United States v. Zingaro, 858 F.2d 94, 98-99 (2d Cir.1988)).

Constructive amendments are *per se* violative of the Fifth Amendment, but variances are subject to the harmless error rule and thus are not grounds for reversal without a showing that a defendant has been prejudiced. Id. (citing Zingaro, 858 F.2d at 98; United States v. Weiss, 752 F.2d 777, 787 (2d Cir. 1985); accord United States v. Ansaldi, 372 F.3d 118, 126-27 (2d Cir.2004).

Before the trial court in this case issued its charge, there was discussion regarding the charge on intent. (T3 at 919-20).  Petitioner's counsel stated that, "[T]he indictment reads that Mr. Robertson intended to cause the death of Ricky Washington, not a third person, and that the People should be held to that, that he intended to cause the death of Ricky Washington.  In other words, that he knew Ricky Washington was in that car and he intended to cause his death, not the death of the third person."  (T3 at 919-20).

Pursuant to NYPL § 125.25(1), a person commits second degree murder when "[w]ith intent to cause the death of another, he causes the death of such person or of a third person."  The trial court's instruction to the jury was:

> In order for you to find Mr. Robertson guilty of murder in the second degree, the People must prove beyond a reasonable doubt two elements: First[,] that on or about November 12th, 2000, in the City of Syracuse, in Onondaga County, the defendant, Malik Robertson, caused the death of the person later identified as Ricky Washington. And second, that the defendant did so with the intent to cause the death of Ricky Washington.

(T3 at 1101).  Notably, Petitioner's trial counsel made no objection to this charge.

10

(T3 at 1101, 1121).

When addressing this issue on direct appeal, the Appellate Division stated: "We reject defendant's further contention that Supreme Court impermissibly amended the indictment with respect to the element of intent to commit the crimes. The court's charge with respect to the elements of Penal Law § 125.25 (1) did 'not alter any element of the crime charged ... or change the theory of the prosecution.'" Robertson, 302 A.D.2d at 957 (quoting People v Waxter, 268 AD2d 899, 900).

Here, the charging terms of the indictment were not altered by the trial court's instruction. The indictment charged Petitioner with Murder in the Second Degree, alleging that Petitioner "on or about the 12th day of November, 2000, at the City of Syracuse, in this [Onondaga] County, intentionally caused the death of Ricky Washington, to wit: the defendant shot the victim multiple times." (Docket No. 18, Exhibit B at p. 19). The trial court's charge stated the jury must find that Petitioner "inten[ded] to cause the death of Ricky Washington." (T3 at 1101).

It is not clear why Petitioner claims this was a constructive amendment of the indictment. He was given notice of the crimes that he was charged with and he was convicted of those crimes only. Stirone v. United States, 361 U.S. 212, 217, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960) (citing Ex parte Bain, 121 U.S. 1, 10, 7 S.Ct. 781, 30 L.Ed. 849 (1887). In fact, with respect to the trial court's charge on intent, his trial counsel stated "[j]ust for the record, we didn't intend that it's a constructive amendment and diminishes the People's burden of proof." (T3 at 921).

In any event, Petitioner is unable to show any prejudice. New York law does not

11

require that Petitioner know the identity of his victim at the time of the killing.   NYPL §125.25(1).   Therefore, habeas relief is not warranted on this claim and it should be DISMISSED.

### 3.   Insufficient Evidence

In Petitioner's third claim for habeas relief, he asserts the verdict was based on insufficient evidence and was against the weight of the evidence.   He states that no proof was provided to show that Petitioner specifically intended to kill Ricky Washington or injure Dayron Bennett.   He asserts that in considering the evidence, the jury could have easily reached the opposite conclusion.

Respondent argues that Petitioner's "weight of the evidence" claim is not cognizable. Respondent also asserts that Petitioner's "insufficient evidence" claim is procedurally barred and, in any event, meritless.

### a.   Weight of the Evidence

To the extent that Petitioner is claiming the verdict was against the weight of the evidence, such a claim is not cognizable on habeas review.   "Weight of the evidence" claims derive from New York Criminal Procedure Law ("CPL") § 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." N.Y.Crim. Proc. Law § 470.15(5); People v. Bleakley, 69 N.Y.2d 490, 495 (1987). Since weight of the evidence claims are grounded in the state criminal procedure statute, they are not cognizable on habeas review. See 28 U.S.C. § 2254(a) (permitting

federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (habeas corpus review not available to remedy alleged error of state law); Hogan v. Livingston Corr. Fac, No. 05-CV-6440, 2007 WL 2907322, at *8 (W.D.N.Y. Oct. 3, 2007) ("Since a 'weight of the evidence' claim is purely a matter of state law, it is not cognizable on habeas review."); Stein v. Artus, No. 04-CV-0439, 2007 WL 2778914, at *7 (N.D.N.Y. Sept. 19, 2007) (same); Welch, 2007 WL 2028048, at *7.  Accordingly, to the extent that Petitioner is making a "weight of the evidence" claim for habeas relief, such claim should be DISMISSED.

### b.    Insufficient Evidence

Respondent argues Petitioner's claim that there was insufficient evidence to support his attempted murder conviction is procedurally barred because the Appellate Division found that it was not preserved for their review.  Robertson, 302 A.D.2d at 956.  However, in the interests of judicial efficiency and because I have concluded that  Petitioner's claim is meritless, the Court will discuss the merits of Petitioner's claim.

A habeas petitioner challenging the sufficiency of the evidence bears "a very heavy burden." Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir.2002) (quotation marks omitted); Einaugler v. Supreme Court of New York, 109 F.3d 836, 840 (2d Cir.1997) (quotation marks omitted).  A habeas challenge to the sufficiency of the evidence "does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781 (1979) (quoting Woodby v. INS, 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966)). Rather, "the relevant question is whether, after viewing the evidence in the light most

13

favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (emphasis in original).

Thus, a habeas court must uphold a conviction unless, upon the record evidence adduced at trial, no rational trier of fact could have found that the prosecution established the defendant's guilt beyond a reasonable doubt. See id.; accord Ponnapula, 297 F.3d at 179 ("[W]e review the evidence in the light most favorable to the State and [hold that] the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial.").

Petitioner was found guilty of committing Murder in the Second Degree and Attempted Murder in the Second Degree.   He argues that there was no proof demonstrating that he intended to commit those crimes.  However, the evidence at trial was overwhelmingly to the contrary.

To wit, there was testimony establishing his motive and means to shoot the victims as well as eyewitness testimony establishing that he did shoot the victims.  There was testimony that Petitioner and Washington were members of rival gangs, and that Washington had a disagreement with Petitioner's gang.  (T3 562-63).  Approximately one week before the shooting, Petitioner and Washington engaged in a heated argument at the "Two-for-One" bar.  That argument became physical, and Petitioner stated "I'll see that n*gger next week."  (T3 at 523-28).

The evening of the shooting, the street was lit well enough for witnesses to observe Petitioner as the man shooting into the car.  (T3 at 892, 730-34, ).  Therefore, Petitioner could have observed that Washington was in the car.   Additionally, Washington had the window to his car rolled down and he was yelling out the window to a friend across the

14

street.  (T3 at 564-65).  There was testimony that Petitioner and two other men were on the

other side of the street when Washington yelled out his window.  Shortly after,  Petitioner

stopped and picked up what appeared to be a gun and then shots rang out.  (T3 at 730-

738).

Another witness observed Petitioner firing shots into the air around the corner from

the bar.  (T at 674). Gun shell casings that were recovered from the murder scene matched

.25 caliber casings recovered from shots fired around the corner.  (T3 at 847-50, 860).

Additionally, Washington's fatal wounds were inflicted by two .25 caliber bullets.  (T3 at

854, 860**)**.

Thus, when viewing the evidence in the light most favorable to the prosecution, a

rational trier of fact could have found that the prosecution established the Petitioner's guilt

beyond a reasonable doubt.  Jackson, 443 U.S. at 318-19.  Accordingly, this claim for

habeas relief should be DISMISSED.


### 4.      Grand Jury Proceedings

Petitioner's fourth claim for habeas relief is that the trial court improperly rejected his

motion to dismiss the indictment due to defective grand jury proceedings.  Respondent

argues that this claim is not cognizable on habeas review.

It is well settled that alleged errors in grand jury proceedings are not cognizable on

federal habeas corpus review.  As this Court has previously explained, "[t]he trial jury's

guilty verdict necessarily renders any irregularities before the grand jury harmless as it

establishes not only that there existed probable cause to indict the defendant, but also that

the defendant was 'in fact guilty as charged beyond a reasonable doubt." <u>Burden v. Filion</u>, 421 F. Supp.2d 581, 589 (W.D.N.Y. 2006) (quoting <u>United States v. Mechanik</u>, 475 U.S. 66, 68, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986)); <u>see</u> <u>also</u> <u>Lopez v. Riley</u>, 865 F.2d 30, 32 (2d Cir. 1989).   Accordingly, Petitioner's claim with respect to the grand jury proceedings should be DISMISSED.

### 5.    Bartender Charles Williams' Testimony

Petitioner's fifth claim for habeas relief is that the trial court erred in allowing Two-For-One's bartender, Charles Williams to testify to Petitioner's scuffle with Ricky Washington a week prior to the shooting without showing how the probative value outweighed the prejudice.

Williams' testimony as to this matter was offered by the prosecution to show motive. To wit, the prosecution's theory was that Petitioner, having had a heated argument with Ricky Washington, was seeking revenge. This revenge ended up in the death of Ricky Washington.   Specifically, Williams testified that the Saturday before the shooting, Petitioner and Washington were involved in a heated argument, and Washington then "jacked up" Petitioner by grabbing his shirt.  (T3 at 523-524, 528).  Williams also testified that Petitioner loudly stated to Washington, "I'll see that n*gger next week."  (T3 at 528). Williams further testified that Petitioner knocked over chairs and tables after his argument with Washington, however, the court sustained defense counsel's objection and struck it from the record.  (T3 at 526-27).  The court then instructed the jury that said testimony was "not relevant" and "had nothing to do with this case."  (T3 at 526-27).

Petitioner argues that the testimony about the fight was of limited probative value

16

and that it constituted improper evidence of prior bad acts.   Accordingly, Petitioner contends that this limited probative value was outweighed by the prejudicial effect of allowing the jury to learn of the fight in the bar the week before.

On direct appeal, the Appellate Division concluded that "[t]he testimony of that witness describing an altercation between defendant and the murder victim was properly admitted as evidence of defendant's motive and intent in the commission of the murder." Robertson, 302 A.D.2d at 957 (citing cases).  The Appellate Division further noted that "[t]he court sustained [Petitioner's] objection to the testimony of that witness describing a second altercation not involving the murder victim and issued a curative instruction. Defense counsel did not seek a further instruction or move for a mistrial, and thus the court's 'instructions must be deemed to have corrected the error to the defendant's satisfaction.'" Id. (quoting People v Heide, 84 NY2d 943, 944; see People v Trembling, 298 AD2d 890).

This Court finds that Petitioner has not established that the Appellate Division's decision in this regard was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Ordinarily, state court rulings on evidentiary matters are matters of state law and "are not reviewable by a habeas court unless the errors alleged are so prejudicial as to constitute fundamental unfairness." Rosario v. Kuhlman, 839 F.2d 918, 924-25 (2d Cir.1988); see also, Lipinski v. People of New York, 557 F.2d 289, 292 (2d Cir.1977) ("The states have traditionally been accorded great latitude in determining rules of evidence to

govern proceedings in their own courts. In this sensitive area, characterized by delicate and interrelated judgments of fairness and efficiency, the federal courts have trod lightly to refrain from abrasive disruptions of state procedures and to avoid rigidity in an area of law that should be, above all others, empirical.").

As a threshold matter, the trial court's decision to admit the testimony of the bartender with respect to the fight between Petitioner and Washington was an appropriate exercise of its broad discretion with regard to evidentiary matters.   Although Williams did not testify that Petitioner threatened Washington's life, the jury could reasonably infer from the facts that Petitioner had a motive to kill Washington.   Accordingly the evidence regarding the bar fight was relevant and admissible as to the question of motive.   Motive is a state of mind fact from which one may infer logically and reasonably that a defendant possessing such a motive, acted on it and committed the act charged.   The motive of a defendant is a legitimate object of proof in a criminal prosecution and ordinarily highly probative of guilt.   Indeed, under New York and federal law, a defendant's prior bad acts are admissible to show proof of motive, common scheme or plan, and intent. Jones v. Stinson, 229 F.3d 112, 120 (2d Cir.2000) (citing People v. Molineux, 168 N.Y. 264, 293, 61 N.E. 286 (1901)); see also Fed.R.Evid. 404(b).

Moreover, there is a well-established presumption that potential prejudice resulting from the admission of evidence can be cured through carefully crafted limiting instructions. Zafiro v. United States, 506 U.S. 534, 540-41 (1993) (emphasizing that prejudice "can be cured with proper instructions and juries are presumed to follow their instructions") (internal quotation marks omitted)); United States v. Downing, 297 F.3d 52, 59 (2d Cir.2002) (stating that "[a]bsent evidence to the contrary, we must presume that juries understand and abide

18

by a district court's limiting instructions.").  The trial court, in this case, prevented Williams, the bartender, from testifying about what it considered to be irrelevant and potentially prejudicial matters and provided the jury with curative instructions in order to cure any prejudice.

For the foregoing reasons, this Court finds that Petitioner is not entitled to habeas corpus relief based upon the alleged erroneous admission of evidence and this claim should be DISMISSED.


### 6.       Hearing on §330.30 and §330.50 Motions

#### a.       Procedural Claim

In Petitioner's sixth claim for habeas relief, he asserts that the trial court erred by refusing to grant him an evidentiary hearing in connection with his motion to set aside the verdict, which was based upon alleged newly discovered evidence.

Specifically, the first piece of "new evidence" was testimony from Yakina Peterson, a distant cousin of Petitioner, to the effect that another individual, James Walker, admitted to the shooting.  However, Walker provided an affidavit stating that he was not the shooter and that he never spoke with Yakina Peterson.  The trial court found that, because Walker was available to testify, any testimony from Peterson regarding Walker's declaration would have been inadmissable as hearsay.  (M[4] at 13-14). It also appeared from the record that the testimony was not "newly discovered" in that the defense either knew of the testimony before trial or could have discovered the same through due diligence.  (M at 3, 4).

---

[4]References preceded by "M" are to the transcript pages of Petitioner's §330.30 and §330.50 motions proceedings.

The second piece of alleged new evidence was Peterson said that she saw Petitioner near a store away from the scene of the murder during the time period of the murder.  The trial court concluded that this evidence was not "newly discovered" because it "could have been discovered before trial by the exercise of due diligence."  (M at 14-15).

Petitioner argues that an evidentiary hearing was necessary to review this alleged new evidence and the trial court erred by ruling without such a hearing.   However, Petitioner only states a claim of procedural defect in state post-conviction proceedings and federal habeas relief is not available for such alleged defects.  Jones v. Duncan, 162 F.Supp.2d 204, 217-18 (S.D.N.Y.2001) ( "All the circuits that have considered the issue, except one, have held that 'federal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings.' ")(quoting Franza v. Stinson, 58 F.Supp.2d 124, 151 (S.D.N.Y.1999)); see also, Fuzia v. Lewin, 2006 WL 1229080, *4 (E.D.N.Y. May 5, 2006)(holding the same).

"While the Second Circuit has not directly addressed this issue, district court decisions within the Circuit (several of which have been affirmed by the Second Circuit) have followed the majority rule." Jones, 162 F.Supp.2d at 218 (citing Diaz v. Greiner, 110 F.Supp.2d 225, 235 (S.D.N.Y.2000) ( "Petitioner's unsupported assertion that the trial court denied his (third) CPL § 440.10 motion without a hearing violated due process is not cognizable on federal habeas review."); Lugo v. Kuhlmann, 68 F.Supp.2d 347, 376 n. 15 (S.D.N.Y.1999); Franza v. Stinson, 58 F.Supp.2d at 152.

Therefore, this Court finds that Petitioner's assertion that the failure to hold a hearing on his CPL § 330.30 and §330.50 newly discovered evidence motion violated due process is not cognizable on federal habeas review.

**b.     Merits of Petitioner's Claim**

Moreover, even if this Court were to address this claim on the merits, it would not find that the state court's denial of Petitioner's CPL § 330.30 and §330.50 motion violated his constitutional rights.

The record indicates that the evidence in question was either known to the defense prior to trial or reasonably could have been discovered through the exercise of due diligence.  See Chamberlain v. Mantello, 954 F.Supp. 499, 508 (N.D.N.Y. 1997) ("[A] habeas petitioner must demonstrate that the alleged newly discovered evidence supporting his claim 'could not with due diligence have been discovered before or during the trial.'"); Clark v. Irvin, 844 F.Supp. 899, 907 (N.D.N.Y.1994) ("In order for a new trial to be granted based on newly discovered evidence, petitioner must show that 'the evidence could not with due diligence have been discovered before or during trial . . . .'").

Further, the alleged newly discovered evidence, which was contradicted by other evidence in the record, did not bear on the constitutionality of Petitioner's conviction. See See Herrera v. Collins, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203(1993) (stating that there must be an independent constitutional violation occurring in the underlying state criminal proceeding to warrant habeas relief); White v. Keane, 51 F.Supp.2d 495, 502 (S.D.N.Y.1999); McCool v. New York State, 29 F.Supp.2d 151, 160 (W.D.N.Y.1998); Roberts v. LeFevre, 88 Civ. 4114, 1990 WL 6556 at *6 (S.D.N.Y.Jan.22, 1990) ("For habeas relief to be available, the newly discovered evidence must bear on the constitutionality of the petitioner's conviction."); Mapp v. Clement, 451 F.Supp. 505, 511 (S.D.N.Y.1978) ("newly discovered evidence only warrants habeas corpus relief where it bears on the 'constitutionality of the applicant's detention; the existence merely of newly

21

discovered evidence relevant to the guilt of a state petitioner is not a ground for relief on federal habeas corpus'")(citing <u>Townsend v. Sain</u>, 372 U.S. 293, 317, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)).

Therefore, Petitioner's claim for habeas relief on this ground should be DENIED.

## IV. CONCLUSION

For the reasons stated above, the Court recommends Malik Robertson's  petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied and that the Petition be dismissed.  Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I recommend that a certificate of appealability not issue.  <u>See</u> 28 U.S.C. § 2253(c)(2) (1996).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED:        February 6, 2008

Syracuse, New York

22

# V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

February 6, 2008

Victor E. Bianchini
United States Magistrate Judge